No. 25-1281

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

American Association for Colleges for Teacher Education, *et al.*,
    *Plaintiffs-Appellees*,
v.
U.S. Department of Education, *et al.*,
    *Defendants-Appellants*.

———————

On Appeal from the United States District Court
for the District of Maryland

———————

**BRIEF OF *AMICUS CURIAE* NATIONAL CENTER FOR LEARNING DISABILITIES IN OPPOSITION TO TIME SENSITIVE MOTION FOR STAY PENDING APPEAL**

———————

DANIEL F. JACOBSON
KYLA M. SNOW*
LYNN D. EISENBERG**
TOBY R. MERRILL**
JACOBSON LAWYERS GROUP PLLC
*1629 K Street NW, Suite 300*
*Washington DC, 20006*
*(301) 823-1148*
*dan@jacobsonlawyersgroup.com*

\* Not admitted in the District of Columbia. Practice limited to matters before U.S. courts.

\*\* Of Counsel

*Counsel for Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus Curiae* states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................iv

INTERESTS OF AMICUS CURIAE ................................................................... 1

SUMMARY OF THE ARGUMENT................................................................... 1

ARGUMENT ......................................................................................................... 4

    I. *Bowen* Forecloses Appellants' Argument................................................. 4

    II. The Tucker Act Does Not Preclude District Court Jurisdiction Over Otherwise Actionable APA Claims ......................................................... 5

    III. Appellees Cannot Bring Their Claim in the CFC................................... 6

    IV. Most Federal Grants Are Not "Contracts" ............................................ 10

    V. Appellants Seek to Nullify Congressionally Mandated Programs.... 12

CONCLUSION................................................................................................... 13

CERTIFICATE OF COMPLIANCE ................................................................. 14

CERTIFICATE OF SERVICE ............................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*,
  703 F. Supp. 3d 126 (D.D.C. 2023) ................................................................ 11

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ................................................*passim*

*Doe v. United States*, 463 F.3d 1314 (Fed. Cir. 2006) ........................................... 7

*Lummi Tribe of the Lummi Rsrv., Wash. v. United States*,
  870 F.3d 1313 (Fed. Cir. 2017) ........................................................................ 9

*Maine Cmty. Health Options v. United States*, 590 U.S. 296 (2020) ................. 6, 7

*Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196 (Fed. Cir. 1997) ......... 8, 9

*St. Bernard Parish Gov't v. United States*, 134 Fed. Cl. 730 (2017) ..................... 11

*Tootle v. Sec'y of the Navy*, 446 F.3d 167 (D.C. Cir. 2006) ........................ 6, 7, 10

**Statutes**

5 U.S.C. § 702 .......................................................................................*passim*

5 U.S.C. § 704 ........................................................................................... 7, 9

5 U.S.C. § 706(2)(A) ............................................................................ 3, 10, 11

20 U.S.C. § 1022 ............................................................................................ 11

20 U.S.C. § 1022a(a) .................................................................................. 7, 11

20 U.S.C. § 1232(d) ..................................................................................... 3, 7

20 U.S.C. § 6631 ........................................................................................... 11

20 U.S.C. § 6632(a) ............................................................................... 7, 11

20 U.S.C. § 6672 ....................................................................................... 11

20 U.S.C. § 6672(a) ........................................................................... 7, 11, 12

28 U.S.C. § 1491(a)(1) ......................................................................... 2, 5, 8, 10

28 U.S.C. § 1491(a)(2) ............................................................................... 11

31 U.S.C. § 6303 ....................................................................................... 10

31 U.S.C. § 6304 ....................................................................................... 10

## INTERESTS OF AMICUS CURIAE[1]

The National Center for Learning Disabilities (NCLD)'s mission is to improve the lives of Americans with learning disabilities. NCLD advances research and policies that address barriers to those with learning disabilities, including students whose communities lack proper funding and resources to support their academic success. NCLD has an immense interest in the Department of Education's termination of the grant programs in this case. These programs are tested pathways to securing high-quality educators for students with disabilities, and slashing them severely harms those that NCLD serves.

## SUMMARY OF THE ARGUMENT

Over the last two months, the Executive Branch has terminated federal grants, *en masse*, whenever the Administration disfavors the congressional policies embodied in the grants. The Executive Branch has used this campaign to wipe away entire statutory programs that Congress mandated, and to impound funds that Congress appropriated for those

---

[1] All parties have consented to the filing of this brief. The NCLD affirms that no counsel for a party authored this brief in whole or in part, no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief, and no person other than the NCLD or its counsel made such a monetary contribution.

programs. When these grant terminations have been challenged, the Administration has made barely any effort to defend them as lawful, but instead has invoked jurisdictional arguments to deny any avenue for restoring the programs. The Administration's principal defense has been that the Tucker Act "impliedly forbids" plaintiffs from bringing Administrative Procedure Act (APA) claims to restore their grants and the underlying programs.

Appellants' Tucker Act defense fails for at least four independent reasons. *First*, Appellants' argument that the Tucker Act "impliedly forbids" any APA claims that would "compel payments" by the federal government clearly conflicts with *Bowen v. Massachusetts*, 487 U.S. 879 (1988), where the Supreme Court held that district courts have jurisdiction over APA claims seeking specific relief even where it will result in the government having to "pay money." *Second*, the Supreme Court has twice rejected the entire predicate of Appellants' theory—that the Court of Federal Claims (CFC) has "exclusive" jurisdiction that precludes otherwise actionable APA claims. The Supreme Court has made clear that the CFC's jurisdiction under 28 U.S.C. § 1491(a)(1) is not exclusive and in fact "yields" to the APA where the criteria for bringing an APA claim are met.

*Third*, Appellees could not even bring their claims in the CFC. The CFC's jurisdiction to hear claims grounded in federal statutes is limited to statutes that are "money-mandating." Neither 20 U.S.C. § 1232(d) nor the statutes creating the programs in this case are money-mandating because they do not mandate payments to specific entities. The CFC also would not have jurisdiction to provide the equitable relief that Appellees seek. Indeed, the Federal Circuit has specifically held that the CFC lacks jurisdiction over actions by grantees seeking to obtain their grant funds.

*Fourth*, Appellees' grants are not subject to the Tucker Act because they are grants, not "contracts." Congress has expressly distinguished federal grants from contracts, and Congress even made clear in enacting the APA's sovereign immunity waiver that it applies to APA claims relating to the administration of federal grants. Moreover, these grants cannot be deemed "contracts" because they do not provide any direct benefit to the federal government.

Appellants' motion for a stay pending appeal should be denied.

## ARGUMENT

### I. *Bowen* Forecloses Appellants' Argument

Appellants do not contend that the district court lacked jurisdiction under 5 U.S.C. § 702 because Appellees' claims are for "money damages." Nor could they make such an argument given *Bowen*. There, the Supreme Court held that APA claims seeking "specific relief"—i.e., an injunction providing "the very thing to which [the plaintiff is] entitled"—are not claims for "money damages," even if the relief results in the government having to "pay money." 487 U.S. at 893-900 (quotations omitted).

Yet Appellants now repackage the "money damages" argument rejected in *Bowen*, contending that the Tucker Act "impliedly forbids" jurisdiction under § 702 for APA claims that would require the government to "pay" grantees or provide them "access [to] funding." Mot. for Stay Pending Appeal ("Mot.") 10. *Bowen* refutes this contention; the district court there had APA jurisdiction to enjoin the federal government's refusal to make a payment to a recipient of a "grant-in-aid program." 487 U.S. at 898-900. More broadly, Appellants' theory that the Tucker Act "forbids" a district court from having jurisdiction over equitable APA claims whenever the relief will result in the payment of money cannot be squared with

4

*Bowen*'s holding that "a federal district court has jurisdiction" under § 702 even if the relief results in "[court] orders for the payment of money," so long as the APA claim is for specific equitable relief. 487 U.S. at 882, 888-901. *Bowen* would be a dead letter if Applicant's theory were correct.

## II. The Tucker Act Does Not Preclude District Court Jurisdiction Over Otherwise Actionable APA Claims

The entire predicate of Appellants' theory also conflicts with Supreme Court precedent. Appellants' arguments rests on the notion that the CFC's jurisdiction under 28 U.S.C. § 1491(a)(1) is "exclusive," Mot. 2, such that otherwise actionable APA claims cannot be brought in district court if the CFC would have jurisdiction over some variant of the claims. The Supreme Court has said the opposite—twice.

In *Bowen*, the Court explained:

> It is often assumed that the Court of Federal Claims has exclusive jurisdiction of Tucker Act claims for more than $10,000 … That assumption is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court. Rather, that court's jurisdiction is "exclusive" only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court. If, however, § 702 of the APA is construed to authorize a district court to grant monetary relief—other than traditional "money damages"—as an incident to the complete relief that is appropriate in the review of agency action, the fact that the purely monetary aspects of the case could have been decided in

5

> the Claims Court is not sufficient reason to bar that aspect of
> the relief available in a district court.

*Bowen*, 487 U.S. at 910 n.48. The Court further explained that just "because monetary relief against the United States is available in the Claims Court under the Tucker Act" does not "oust a district court of its normal jurisdiction under the APA." *Id.* at 904.

The Supreme Court reaffirmed this proposition in *Maine Community Health Options v. United States*, 590 U.S. 296 (2020), holding that "[t]he Tucker Act yields . . . when the Administrative Procedure Act . . . provides an avenue for relief." *Id.* at 323-34.

Supreme Court precedent thus contradicts the foundation of Appellants' argument.

## III. Appellees Cannot Bring Their Claim in the CFC

Appellants' Tucker Act defense independently fails because the CFC would lack jurisdiction over Appellees' claim. The D.C. Circuit has "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006). That makes sense in the context of § 702's "impliedly forbids"

clause: "[t]here cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Id.* at 177.

1. The CFC would lack jurisdiction over Appellees' claim because the statute underlying their claim, 20 U.S.C. § 1232(d), is not "money-mandating." To bring suit in the CFC based on violations of constitutional or statutory provisions, the provision must be "money-mandating." *Id.* at 323 (quotation omitted). This means the provision "entitle[s]" particular parties to be paid particular amounts. *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006). It is "rare" that this strangent test is met. *Maine Cmty.*, 590 U.S. at 324.

Section 1232(d) is clearly not money-mandating because it does not mandate the payment of funds to any particular person. Nor are the statutory provisions creating the grant programs here money-mandating. They do not require payments to specific entities; the Secretary of Education awards the grants "on a competitive basis." 20 U.S.C. §§ 1022a(a), 6632(a), 6672(a).

Appellants' argument therefore would mean that, even if a grant termination *indisputably* violated 20 U.S.C. § 1232(d), a grantee would have

7

no recourse—anywhere—to challenge that violation. That cannot be correct.

2. The CFC would also lack jurisdiction over Appellees' claim because Appellees seek equitable relief. Under 28 U.S.C. § 1491(a), the CFC may grant injunctive relief only if it is "an incident of and collateral to" a money judgment. Appellees seek only equitable relief, and future money damages could not compensate Appellees for the loss suffered from shuttering these programs that are needed to benefit students. Because the CFC would lack jurisdiction to provide this equitable relief, the Tucker Act cannot deprive the district court of jurisdiction.

3. Removing any doubt that the CFC would lack jurisdiction here, the Federal Circuit has held that the CFC lacks jurisdiction over claims by grantees seeking access to grant funds.

In *National Center for Manufacturing Sciences v. United States*, 114 F.3d 196 (Fed. Cir. 1997), a grantee sued the Air Force seeking "specific performance of [a] Cooperative Agreement" and "access to" funds that Congress appropriated. 114 F.3d at 198-99, 201. The Federal Circuit held that the district court had jurisdiction over the claims and reversed its transfer of the case to the CFC. The Federal Circuit held that even if the

statute entitled the plaintiff to the grant funds, the relief would not be the type of "unconditional payment" of funds that the CFC may grant as damages. *Id.* at 198-99. The plaintiff instead would receive access to grant funds "subject to restrictions and constraints" under a cooperative agreement, which is equitable relief that a district court may grant. *Id.* at 198, 201.

In *Lummi Tribe of the Lummi Reservation v. United States*, 870 F.3d 1313 (Fed. Cir. 2017), the Federal Circuit was even more explicit that the CFC is "without jurisdiction" to order relief providing grantees access to funds. *Id.* at 1317. The court held that the relevant statute, which provided a formula for awards, was not "money-mandating" because any disbursement of funds would be pursuant to a "strings-attached" grant agreement. *Id.* at 1317-18. Because the grantee did not have a right to "a free and clear transfer of money," the CFC lacked jurisdiction to grant relief. *Id.* at 1319. The "disbursement of funds" required equitable relief that is "not within the Claims Court's purview." *Id.* at 1318-19.

These cases make clear that if the instant case were dismissed and Appellees re-filed in the CFC seeking access to their grant funds, the CFC

would have no choice but to dismiss as well. This outcome should be "categorically reject[ed]." *Tootle*, 446 F.3d at 176.

## IV. Most Federal Grants Are Not "Contracts"

Appellants' motion should also be denied because federal grants such as those here are not "contracts" subject to the Tucker Act. Section 1491(a)(1) provides the CFC jurisdiction over disputes founded upon an "express or implied contract with the United States." 20 U.S.C. § 1491(a)(1). Congress has expressly distinguished federal procurement "contracts" from "grant agreements." A "procurement contract" exists where "the principal purpose of the instrument is to acquire . . . property or services for the direct benefit or use of the United States Government." 31 U.S.C. § 6303. In contrast, an agency "shall use" a "grant agreement" where "the principal purpose of the relationship is to transfer a thing of value to the [recipient] to carry out a public purpose." *Id.* § 6304. And in enacting § 702's sovereign immunity waiver, Congress specifically stated that it intended to waive sovereign immunity for APA claims regarding the "administration of Federal grant-in-aid programs." *Bowen*, 487 U.S. at 900 (quoting committee reports).

Here, Congress directed the Department of Education to award "grants," not contracts. 20 U.S.C. §§ 1022a(a), 6632(a), 6672(a). That choice must be honored.

But even if grant agreements could sometimes be considered contracts under the Tucker Act, the grants here are not because they do not provide the needed "consideration" to the federal government. Courts have held that, to qualify as a "contract" under the Tucker Act, grants must provide consideration that "render[s] a benefit to the government." *Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 132 (D.D.C. 2023) (quotation omitted). That benefit must be "tangible and direct, rather than generalized or incidental." *Id.* (quotations omitted). Merely advancing U.S. "policy interests" or providing a "generalized benefit" for the public is not consideration in this context; the benefit must be direct, such as a "financial benefit." *Id.* at 133-34; *St. Bernard Parish Gov't v. United States*, 134 Fed. Cl. 730, 736 (2017).

The grants here do not provide direct benefits to the federal government. The statutes prescribe the provision of grants to improve "student achievement" and "the quality of prospective and new teachers," 20 U.S.C. § 1022, to support the "development" of teachers and school

administrators, *id.* § 6672, and to develop compensation and workforce management systems for schools, *id.* § 6631. These programs serve critical policy purposes, but they do not provide direct financial or other tangible benefits to the federal government.

## V. Appellants Seek to Nullify Congressionally Mandated Programs

Finally, in assessing the public interest, this Court should consider Appellants' request in the context of the Executive Branch's broader efforts to use grant terminations to nullify congressionally mandated programs. Here, for example, Congress mandated that the Department of Education "shall award" Supporting Effective Education Development (SEED) Grants. 20 U.S.C. § 6672(a). But now Appellants have terminated virtually all SEED grants, rendering this statutorily mandated program defunct.

Appellants repeatedly assert that the order below will impede the Executive Branch from carrying out its preferred "policies," Mot. 24, but it is Congress' policies and fiscal decisions that matter. If current law is inconsistent with the Executive Branch's policy preferences, its recourse is to lobby Congress to change the law. It is not to use grant terminations as a vehicle for nullifying statutory programs and appropriations.

## CONCLUSION

The Court should deny the motion for a stay pending appeal.

Respectfully submitted.

DANIEL F. JACOBSON
KYLA M. SNOW*
LYNN D. EISENBERG**
TOBY R. MERRILL**
JACOBSON LAWYERS GROUP PLLC
*1629 K Street NW, Suite 300*
*Washington DC, 20006*
*(301) 823-1148*
*dan@jacobsonlawyersgroup.com*

* Not admitted in the District of Columbia. Practice limited to matters before U.S. courts.

** Of Counsel

*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing *amicus* brief complies with the word limit of Federal Rules of Appellate Procedure 27(d)(2)(A) and 29(a)(5) because the brief contains 2,572 words. The brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word in proportionally spaced 14-point Book Antiqua typeface.

*/s/Daniel F. Jacobson*
Daniel F. Jacobson

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/Daniel F. Jacobson*
Daniel F. Jacobson
