No. 25-1281

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

American Association for Colleges for Teacher Education, *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Education, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Maryland

# REPLY IN SUPPORT OF TIME SENSITIVE MOTION
# FOR STAY PENDING APPEAL

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

KELLY O. HAYES
  *United States Attorney*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
SEAN R. JANDA
BRIAN J. SPRINGER
BENJAMIN C. WEI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

## INTRODUCTION

Plaintiffs' response confirms that this action seeks to enforce plaintiffs' asserted rights under contractual agreements with the Department of Education ("Department"). Such claims are properly brought in the Court of Federal Claims, and the district court accordingly lacked jurisdiction. Plaintiffs' arguments to the contrary rely on cases involving statutory rights to federal funds, thus ignoring the salient features of the claim they assert here.

On the merits, plaintiffs identify no authority that purports to limit the Department's authority to determine which grants will best carry out its mission. Instead, they grasp at general statements of statutory purpose that may be used in creating grant programs, but have no evident relevance to the present dispute. And in insisting that the Department engaged in no individualized review, plaintiffs do not address the fact that some of their members' grants were terminated while others were not.

The government established that it is being forced to make payments—which it may not be able to recover—contrary to its policy preferences. Plaintiffs, conversely, have no cognizable interest in funds to which they are not legally entitled. And the district court compounded its

error by providing relief to unidentified members of the plaintiff organizations, thus creating asymmetric litigation that plaintiffs make no effort to defend. The preliminary injunction should be stayed.

## ARGUMENT

### A. The Government Is Likely to Prevail on the Merits

*1. The district court lacked jurisdiction.*

Plaintiffs correctly concede that contract claims are properly filed in the Court of Federal Claims, and assert only that the district court has "jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government." Opp. 8 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). But this case—unlike the cases on which plaintiffs rely—is premised on a contractual relationship with the government, so the district court lacked jurisdiction.

a. Plaintiffs filed this case to "reinstate . . . grants for teacher preparation programs that were unlawfully terminated . . . ." Opp. 2. And those grants exist only by virtue of written grant agreements between the government and plaintiffs' members. Those written agreements specify, among other things, the amount the government agrees it is obligated to pay, the services grantees agreed to perform, and the terms under which

3

the grant may be terminated.  Indeed, the cited termination provision at issue here—where the government determines the grant "no longer effectuates the program goals or agency priorities"—is an express provision of the grant agreements.  App. 90 n.13.  The grant agreements are therefore contracts, even if not archetypal, and this case is a dispute over whether those contracts were violated.  *See Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (noting that "many . . . federal grant programs" are "much in the nature of a contract") (citation and internal quotation marks omitted); *see also Columbus Regional Hosp v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) ("We have followed our predecessor court in treating federal grant agreements as contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound.").

Holding the government to the terms of these grants is premised on a contractual relationship.  As the D.C. Circuit has recognized, "where plaintiff would have had no affirmative claim but for his contract rights," the "action was under [the] Tucker Act even though" the plaintiff alleged a statutory violation.  *A & S Council Oil Co. v. Lader*, 56 F.3d 234, 241 (D.C.

4

Cir. 1995) (citing *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)).

Furthermore, the object of the plaintiffs' suit is for the government to perform its obligations under the contracts by paying the remainder of the funds that were specified in the grant agreements. Thus, plaintiffs' "wan[t] the Government to keep paying up" and "to cancel the termination[s], pay money due, and reinstate the [grants]." *United States Conference of Catholic Bishops v. United States Dep't of State*, No. 25-cv-465, 2025 WL 763738, at *5-*6 (D.D.C. Mar. 11, 2025), injunction pending appeal denied, No. 25-5066 (D.C. Cir. Mar. 28, 2025). That is equivalent to the "classic contractual remedy of specific performance." *Id.* at *5 (citation omitted). That remedy is unavailable; contract claims "must be heard in Claims Court," *id.* at *7, which generally can award damages. Thus where, as here, "the alpha and omega of this dispute" is a contract claim for moneys allegedly owned, the district court lacks jurisdiction under the Administrative Procedure Act ("APA"). *United States v. J & E Salvage Co.*, 55 F.3d 985, 989 (4th Cir. 1995).

b. Plaintiffs' counterarguments are flawed. Plaintiffs' primary argument is that the terminated grant agreements are not "contracts" because the grants "do not provide a 'tangible' and 'direct' benefit to the

5

government." Opp. 8.  But the Federal Circuit has made clear that when the government implements "statutorily mandated subsidy programs" by "employ[ing] contracts to set the terms of and receive commitments from recipients with respect to such subsidies," such agreements can fall under the Tucker Act.  *Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021).  Here, grant recipients signed agreements under which they obtain funds in exchange for providing services that, as plaintiffs themselves describe, provide numerous benefits to the government, including "prepar[ing] educators in the United States and help[ing] mitigate dramatic teacher shortages, especially in high-need communities." Opp. 2.

Plaintiffs also characterize this case as involving APA claims because "this action challenges broad agency overreach."  Opp. 9.  In support, plaintiffs rely upon a provision of the General Education Provisions Act, 20 U.S.C. § 1232(d) ("GEPA"), that governs the promulgation of new regulations concerning grants.  That has no relevance here, since the Department is relying upon existing authority.  Mot. 19-20.  More tellingly, plaintiffs do not articulate how GEPA, or any other statute or regulation, provides them with the "source of the rights" they assert.  *Megapulse*, 672

F.2d at 967. That is because those statutes and regulations authorize the grant programs generally but vest the Department with broad discretion to issue or terminate specific grants. Mot. 19-21. The only "source" that can result in the payment of grant money to Plaintiffs' members is the grant agreements. Plaintiffs underscore this point when they argue "this case concerns termination of grants *already awarded* to specific recipients." Opp. 14 (emphasis in original).

As for remedy, plaintiffs claim that they are not seeking relief available for a Tucker Act claim because they do not seek a "money judgment" or a "specific sum" from the government. Opp. 9. But they do. Plaintiffs want the government to "adhere to its obligation to provide Congressionally-directed funding to the Grant Recipients." Opp. 21. While the grant agreements, not Congress, give rise to the obligation, this statement makes clear the plaintiffs seek money. In any event, Plaintiffs cannot create jurisdiction in the district court by forswearing the only remedy that is available for the claims they bring. And contrary to plaintiffs' protestation that their contract remedies will be inadequate, a midstream breach of contract is not unknown to contract law, which is equipped to address it in calculating damages.

Plaintiffs attempt to elide the character of the relief they seek by citing two Federal Circuit decisions that tackle the fundamentally different situation where a statute arguably creates an obligation to pay. In *Lummi Tribe of the Lummi Reservation v. United States*, 870 F.3d 1313 (Fed. Cir. 2017), the only issue was whether a statute that established housing grants for Native American tribes created a right to money damages. The Federal Circuit concluded the statute did not, which took it outside the ambit of the Tucker Act. *Id.* at 1319. As that court subsequently explained, its holding did not extend to the breach-of-contract claim in that very case—based, as here, on grant agreements rather than traditional contracts—much less did it state any rule of law applicable to addressing contract claims more generally. *See Boaz*, 994 F.3d at 1366 ("Given that our holding in *Lummi* did not extend to the Lummi Tribe's breach of contract claim, we see no reason to extend it to the PHAs' claim here.").

Likewise, *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196 (Fed. Cir. 1997), involved a statute that required $40 million to "be made available only for the National Center for Manufacturing Sciences." *Id.* at 198. In concluding that APA review was not foreclosed, the Federal Circuit relied upon the fact that the plaintiff was "seeking funds to which it claims

8

is entitled under a statute." *Id.* at 200. The conclusion that such a claim did not seek "money damages" under the APA, *id.*, has little relevance to this case.

Plaintiffs finally cite *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099 (D.C. Cir. 2022). But in that case, the D.C. Circuit emphasized that the plaintiff was seeking to establish a statutory violation by a governmental entity with which it had "no contractual relationship." *Id.* at 1109. In short, plaintiffs cite no case in which a plaintiff has been entitled to evade Tucker Act jurisdiction while seeking to enforce an agreement with the government for monies owed.

> 2. *The Department's decision to terminate certain grants was lawful.*

In any event, the district court wrongly concluded that the Department's selective termination of some grants violated the APA.

a. As a threshold matter, the challenged "agency action" in this case—discontinuing specific grants within a program to reallocate those resources to more productive uses—is committed to agency discretion and not reviewable under the APA. 5 U.S.C. § 701(a)(2); *see* Mot. 15-18. Plaintiffs' contrary argument relies on the premise that GEPA and the

9

Department's published list of priorities and definitions that "may" be used in grant programs create a "meaningful standard" to judge the Department's exercise of discretion. Opp. 13. Plaintiffs, however, never explain how. Nor could they.

The cited provision of GEPA relates to circumstances where the Department promulgates new regulations relating to grants. 20 U.S.C. § 1232(d). Here, however, the Department is relying upon existing authority. Nor is the Department's rule announcing its priorities and related definitions any more relevant. That rule does not speak to termination at all, and instead only lists a set of optional items that "may" be used in grant programs. 86 Fed. Reg. 70612 (Dec. 10, 2021); Mot. 19-20. Thus, neither GEPA nor the Department's published list of priorities and definitions establishes a "meaningful standard" to judge the Department's decision here to selectively terminate some grants.

For similar reasons, plaintiffs' invocation of the statutory purposes for the grants—and the First Circuit's invocation of them in *California v. U.S. Dep't of Education*, No. 25-1244, 2025 WL 878431 (1st Cir. Mar. 21, 2025)—provides no basis for judicial review. Plaintiffs' suggestion that a broad set of statutory priorities provides a basis for second-guessing an

agency's funding judgments cannot be reconciled with *Lincoln v. Vigil*, 508 U.S. 182 (1993), as explained in our motion. Mot. 15-19.

To the extent there remains any doubt about the Department's broad discretion here, it is dispelled by the termination provision in 2 C.F.R. § 200.340(a). While the plaintiffs claim this rule provides a "meaningful standard" for judicial review, the opposite is true. Opp. 14. That provision allows the Department to terminate a grant "if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(2) (Sept. 30, 2024). Far from limiting the Department's authority, this language was adopted in express rejection of a requirement that the termination be only "for cause," and was intended to allow termination where it "may be in the interest of the government to terminate the Federal award." 85 Fed. Reg. 49506, 49508 (Aug. 13, 2020). Plaintiffs cling to their belief that this government-wide regulation must be read to incorporate by reference a Department-specific set of optional priorities for grant programs. But they provide no explanation of why, despite the government's arguments on the point. *See* Mot. 20.

b. In any event, the grant terminations here were "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423

(2021). The grants were terminated only after individualized review, App. 97-99; Mot. 21-22, determined that the affected programs included "DEI initiatives" that conflicted with the Department's current policies, App. 89; Mot. 22. Plaintiffs continue to insist that there was no individualized determination, but do not dispute that some of their members' grants were terminated while others were not. *See* Mot. 23. Nor can they plausibly assert that it was unclear in the termination letter that the Department was targeting DEI initiatives.

### B. The Equitable Factors Favor a Stay

The balance of equities and the public interest favor a stay pending appeal. The district court's order required the Department to reinstate the access of all members of Plaintiffs to TQP, SEED, and TSL funds. App. 106. In addition to inflicting constitutional harm to the Executive Branch from judicial arrogation of executive functions, the order under review has resulted in the outflow of significant amounts of money from the federal fisc with minimal oversight and little prospect of recovery. Mot. 24. In contrast, plaintiffs will receive all the money they are legally entitled to if they prevail, even in the absence of a preliminary injunction. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012).

Plaintiffs argue that the government is not suffering any harm because there are safeguards to protect against illegal drawdown of grant funds. Opp. 19-20. This misses the point. The harm suffered by the government is the use, by plaintiffs' members, of public funds on programs that the Department believes do not serve the public interest. That harm occurs regardless of whether the grant recipients otherwise comply with the terms of their grants.

### C. The District Court's Order is Overbroad

The district court's order is overbroad because it extends to all "TQP, SEED, and TSL Grant Awards of Plaintiff NCTR and Plaintiffs' Grant Recipient members," App. 106, and not merely those identified in the complaint. As a result, unidentified members of the organization can obtain relief if plaintiffs prevail but may not be precluded from obtaining relief separately if the government prevails. This inequity is heightened in this case as, following entry of the injunction, plaintiffs have asked the government to restore grants to additional institutions who have suddenly "joined" plaintiffs as members. Although that effort should be rejected even under the terms of the existing injunction, it highlights the unfairness of allowing members to identify themselves once they learn that the

plaintiffs have prevailed, but to lie low and seek relief in a different forum if the government wins.

## CONCLUSION

For the foregoing reasons and those in the government's motion, the Court should grant a stay pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

KELLY O. HAYES
  *United States Attorney*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY

 */s/ Sean R. Janda*
SEAN R. JANDA
BRIAN J. SPRINGER
BENJAMIN C. WEI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 514-3388*
  *sean.r.janda@usdoj.gov*

APRIL 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2) because the reply contains 2468 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Book Antiqua typeface.

*/s/ Sean R. Janda*
SEAN R. JANDA

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2025, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Sean R. Janda
SEAN R. JANDA