No. 25-1281

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

U.S. Department of Education, *et al.*,

Defendants-Appellants,

v.

American Association of Colleges for Teacher Education, *et al.*,

Plaintiffs-Appellees.

_____

On Appeal from the United States District Court
for the District of Maryland

_____

**REPLY BRIEF FOR APPELLANTS**

_____

BRETT A. SHUMATE
   *Assistant Attorney General*

KELLY O. HAYES
   *United States Attorney*

MARK R. FREEMAN
DANIEL TENNY
SEAN R. JANDA
BRIAN J. SPRINGER
BENJAMIN C. WEI
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7235*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 616-2875*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

INTRODUCTION AND SUMMARY .................................................. 1

ARGUMENT ....................................................................................... 5

I.   The District Court Lacked Jurisdiction over Plaintiffs'
     Claims ........................................................................................ 5

     A.   The district court lacked jurisdiction under the APA
          because this case seeks to enforce a contractual
          obligation to pay money. ................................................ 5

     B.   The Department's decision to reallocate funds is
          committed to agency discretion and not reviewable
          under the APA. ............................................................ 17

     C.   The challenged grant terminations were reasonable
          and reasonably explained. ........................................... 21

II.  The Relevant Equitable Considerations Preclude Injunctive
     Relief ........................................................................................ 24

III. The Preliminary Injunction Is Overbroad .................................. 26

CONCLUSION .................................................................................. 29

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                          **Page(s)**

*AIDS Vaccine Advocacy Coalition v. U.S. Dep't of State*,
770 F. Supp. 3d 121 (D.D.C. 2025) ...................................................... 17

*Albrecht v. Committee on Emp. Benefits of the Fed.*
*Rsrv. Emp. Benefits Sys.*,
357 F.3d 62 (D.C. Cir. 2004) ........................................................... 2, 9

*Amica Ctr. for Immigrant Rights v. U.S. Dep't of Just.*, No. 25-298,
2025 U.S. Dist. LEXIS 127513 (D.D.C. July 6, 2025) ........................ 21

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) ............................................................. 27

*Bennett v. New Jersey*,
470 U.S. 632 (1985) .......................................................................... 12

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ........................................................................ 8, 9

*California v. U.S. Dep't of Educ.*,
132 F.4th 92 (1st Cir. 2025) ............................................................... 6

*Columbus Reg'l Hosp. v. United States*,
990 F.3d 1330 (Fed. Cir. 2021) ............................................... 12-13, 13

*Department of Educ. v. California*,
145 S. Ct. 966 (2025) ........................................... 1, 4, 5, 6, 8, 9, 14, 24

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) .......................................................................... 22

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) ............................................................................ 6

*Ingersoll-Rand Co. v. United States*,
780 F.2d 74 (D.C. Cir. 1985) ............................................................. 11

*King v. Herbert J. Thomas Mem'l Hosp.*,
159 F.3d 192 (4th Cir. 1998) ............................................................. 25

ii

*Kirk v. Commissioner of SSA,*
   987 F.3d 314 (4th Cir. 2021) ............................................................... 22

*Lincoln v. Vigil,*
   508 U.S. 182 (1993) ................................................................. 3, 18, 19

*Lummi Tribe of the Lummi Rsrv. v. United States,*
   870 F.3d 1313 (Fed. Cir. 2017) ........................................................ 14

*Megapulse, Inc. v. Lewis,*
   672 F.2d 959 (D.C. Cir. 1982) .......................................................... 10

*National Ctr. for Mfg. Scis. v. United States,*
   114 F.3d 196 (Fed. Cir. 1997) ......................................................... 14

*Nken v. Holder,*
   556 U.S. 418 (2009) ......................................................................... 24

*Presidential Gardens Assocs. v. United States ex rel.*
   *Secretary of Hous. & Urb. Dev.,*
   175 F.3d 132 (2d Cir. 1999) ............................................................ 16

*Spectrum Leasing Corp v. United States,*
   764 F.2d 891 (D.C. Cir. 1985) ........................................... 11, 14, 15, 16

*Sustainability Inst. v. Trump,* No. 25-1575,
   2025 WL 1587100 (4th Cir. June 5, 2025) ........................................ 7

*Trump v. Boyle,* No. 25A11,
   2025 U.S. LEXIS 2695 (U.S. July 23, 2025) ............................. 1, 7, 24

*Trump v. CASA, Inc.,*
   145 S. Ct. 2540 (2025) .......................................................... 4, 27, 28

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State,*
   770 F. Supp. 3d 155 (D.D.C. 2025) .................................................. 11

*United States v. J & E Salvage Co.,*
   55 F.3d 985 (4th Cir. 1995) .............................................................. 10

*Vera Inst. of Just. v. U.S. Dep't of Just.,* No. 25-cv-1643,
   2025 U.S. Dist. LEXIS 128304 (D.D.C. July 7, 2025) ............. 11-12, 13

iii

*Westar Energy, Inc. v. FERC*,
  473 F.3d 1239 (D.C. Cir. 2007) .......................................................... 22,

**Statutes:**

Administrative Procedure Act (APA):
  5 U.S.C. § 701(a)(2) ........................................................... 3, 18
  5 U.S.C. § 702 ................................................. 2, 9, 10, 16, 17
  5 U.S.C. § 704 ..................................................... 2, 10, 16

20 U.S.C. § 1022a(a) ...................................................... 18

20 U.S.C. § 1022a(c) ...................................................... 18

20 U.S.C. § 6632(a) ....................................................... 18

20 U.S.C. § 6672(a) ....................................................... 18

28 U.S.C. § 1491(a)(1) ............................................ 2, 9, 14

28 U.S.C. § 1491(b) ................................................... 2, 14

**Regulations:**

2 C.F.R. § 200.208 ............................................................. 7

2 C.F.R. § 200.340(a) ................................................. 20, 23

2 C.F.R. § 200.340(a)(4) ............................................ 20, 23

34 C.F.R. § 75.1(b) ..................................................... 20, 23

**Other Authorities:**

85 Fed. Reg. 49,506 (Aug. 13, 2020) ............................... 20

86 Fed. Reg. 70,612 (Dec. 10, 2021) ......................... 19, 23

## INTRODUCTION AND SUMMARY

1. In what the district court described as this case's "doppelganger," JA 711, the Supreme Court explained that "the District Court lacked jurisdiction to order the payment of money under the [Administrative Procedure Act (APA)]," because "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *Department of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam). While this ruling was "not conclusive as to the merits, [it] inform[s] how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, No. 25A11, 2025 U.S. LEXIS 2695, at *1 (U.S. July 23, 2025). The Supreme Court's reasoning in an identical case is enough to decide this case, as the stay panel recognized. Order, Apr. 10, 2025.

2. But even without the benefit of the Supreme Court's guidance, it is evident that the district court lacked jurisdiction to adjudicate this case under the APA. That is because plaintiffs' grant agreements are the alpha—the precipitating event was the termination of grants—and omega—the relief plaintiffs seek is to compel the government to pay

money under the terms of those grants—of this case. For that reason, the Tucker Act "impliedly forbids" the bringing of this case under the APA. *Albrecht v. Committee on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (quotation omitted).

Plaintiffs' argument to the contrary attempts to refute the applicability of numerous provisions that are not at issue here. They rely on cases holding that certain actions did not seek money damages, *see* 5 U.S.C. § 702, that there was no adequate remedy at law, *id.* § 704, or that this is not a procurement action, 28 U.S.C. § 1491(b). None of that has anything to do with whether this action is impliedly precluded, 5 U.S.C. § 702, by the provision of the Tucker Act that applies to claims against the United States premised on contracts, 28 U.S.C. § 1491(a)(1). That argument was resolved by *California*. Finally, plaintiffs complain that their preferred remedy—specific performance of the grant agreement—is unavailable in the Court of Federal Claims. While correct, this fact is not an anomaly suggesting legal error but rather a feature of the remedial scheme established by Congress.

3. Even if the APA were applicable, the district court still lacked jurisdiction because the challenged decisions to terminate grants were

2

committed to agency discretion by law. Plaintiffs do not contest that the relevant statutes are effectively lump-sum appropriations. Decisions to reallocate funding governed by such statutes, the Supreme Court made clear, are "'committed to agency discretion by law' and therefore not subject to judicial review under the Administrative Procedure Act." *Lincoln v. Vigil*, 508 U.S. 182, 184 (1993) (quoting 5 U.S.C. § 701(a)(2)). Plaintiffs' argument to the contrary rests upon a regulation listing optional priorities that may be used in grant programs. But that regulation is self-described as optional and does not purport to limit the agency's discretion to select which grants should be funded.

4. The challenged grant terminations were, in any event, reasonable and reasonably explained. As plaintiffs themselves allege, it "is clear" that the grants were terminated because they funded "Diversity, Equity, and Inclusion" (DEI) and "equity training." JA 25-26 (quotation omitted). Plaintiffs' argument now that they do not know why their grants were terminated rings hollow.

5. The equities also balance against the preliminary injunction ordered by the district court. As the Supreme Court explained in

3

*California*, the government would suffer irreparable harm because it is "unlikely to recover the grant funds once they are disbursed." 145 S. Ct. at 969. Conversely, the denial of injunctive relief would not prevent plaintiffs' members from "recover[ing] any wrongfully withheld funds through suit in an appropriate forum." *Id.* Plaintiffs argue that this Court should ignore the Supreme Court's holding because the government did not contest plaintiffs' claim of irreparable harm in district court, but this Court is plainly entitled to balance the equities, and no doctrine compels deliberate ignorance of clear Supreme Court guidance.

6. Finally, the district court's injunction was overbroad because it provided relief to entities that had not been identified in this lawsuit on the ground that they were members of one of the plaintiff organizations. JA 685-686. This is contrary to the Supreme Court's recent holding that a district court cannot provide "relief that extend[s] beyond the parties." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552 (2025). Indeed, that is precisely what happened here when, following the entry of the injunction, plaintiffs asked the government to restore grants to additional institutions who suddenly "joined" plaintiffs as members.

4

For those reasons, the district court's injunction should be vacated, and the case should be remanded with instructions to dismiss for lack of jurisdiction.

## ARGUMENT

## I.    The District Court Lacked Jurisdiction over Plaintiffs' Claims

### A.    The district court lacked jurisdiction under the APA because this case seeks to enforce a contractual obligation to pay money.

1.  In what district court called this case's "doppelganger," JA 711, the Supreme Court held that the APA does not provide jurisdiction to do what the district court did here, which was to undo the termination of grants. *Department of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam).  Like this case, *California* was a challenge to the termination by the Department of Education (Department) of grants for teacher education, including some of the same grant terminations challenged here.  *See, e.g.*, JA 355 (citing Teacher Quality Partnership Program (TQP) grant to Towson University and Supporting Effective Educator Development Program (SEED) grant to the University of Maryland that were also cited in *California*).  Also like this case, the basis for *California* was that the Department's termination for

5

"discriminatory practices—including in the form of DEI" allegedly violated the APA.  JA 646 (quoting JA 293); *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96-97 (1st Cir. 2025).  And like this case, the remedy the plaintiffs sought and the district court provided was an order that reinstated the terminated grants.  JA 685-686; *California*, 132 F.4th at 95-96.  In granting the government's request for emergency relief, the Supreme Court explained that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *California*, 145 S. Ct. at 968 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).  That explanation resolves this case.

The district court expressly declined an invitation to reconcile its decision with the Supreme Court's ruling in *California*.  JA 711. Plaintiffs' attempt to do so fares no better.  First, plaintiffs argue that this Court is free to disregard *California* because it was the disposition of an emergency application for a stay pending appeal.  Pls.' Br. 27.  But the Supreme Court recently explained that while "interim orders are not conclusive as to the merits, they inform how a court should exercise

its equitable discretion in like cases." *Trump v. Boyle*, No. 25A11, 2025 U.S. LEXIS 2695, at *1 (U.S. July 23, 2025). At an absolute minimum, this Court should analyze the identical issues in light of the guidance provided by the Supreme Court. *See Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) (staying injunction based on *California*).

Second, plaintiffs rely on the fact that they also complain of the imposition of "'route pay'" conditions and not just the grant terminations. Pls.' Br. 29. But the authority to impose pay conditions is an express grant term. JA 669 n.13 (noting the grant agreements incorporate 2 C.F.R. Part 200); *see* 2 C.F.R. § 200.208 (grant pay conditions under Part 200). Therefore, regardless of whether the claim is that the grant was improperly terminated, or that a pay condition was improperly imposed, the underlying claim is still a breach of the grant agreement.

Third, plaintiffs argue that *California* is distinguishable because plaintiffs have established that they will suffer irreparable harm if the grants remain terminated. Pls.' Br. 28-29. That distinction only highlights that the government faces a lower burden here. To obtain

7

discretionary relief in the form of a stay from the Supreme Court, the government needed to establish likelihood of success on the merits, irreparable harm, and a favorable balance of equities. But this Court is reviewing a district court injunction that could only issue if plaintiffs satisfied all of those elements. Thus, if *California* demonstrates that plaintiffs do not have a likelihood of success on the merits because the district court likely lacks jurisdiction, the injunction should be vacated for that reason irrespective of whether plaintiffs would suffer irreparable harm. And, in any event, *California* made clear that the harm plaintiffs claim to have established is outweighed by the harm to the government from an injunction reversing the grant terminations. 145 S. Ct. at 969; *see infra* Part II.

Fourth, plaintiffs argue that *Bowen v. Massachusetts*, 487 U.S. 879 (1988), is controlling because they seek "forward-looking equitable relief" and not "money damages for past wrongs." Pls.' Br. 21-23, 29-30 (quoting JA 695). But the Supreme Court specifically considered and rejected that argument in *California*, noting that while "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds," the

8

"APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money along the lines of what the District Court ordered here." *California*, 145 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910) (quotation omitted). Thus, the Supreme Court explained why *Bowen* has no application in cases like this one.

The Supreme Court's discussion reflects the more general point that this case concerns the intersection of the APA's provision that its waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," 5 U.S.C. § 702, and the Tucker Act's consent to suit for "any claim against the United States founded . . . upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1). It is well established that this Tucker Act provision "impliedly forbids" the bringing of "contract actions" against "the government in a federal district court" under the APA. *Albrecht v. Committee on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (quotation omitted). But *Bowen* has nothing to do with that provision and did not involve any contract with the government at all. The discussion plaintiffs reference instead comes from the portion of *Bowen*

9

that addresses the distinct portion of the APA rendering it inapplicable to suits for "money damages," 5 U.S.C. § 702, but the government is not relying on that limitation here. *Bowen* separately discussed a limitation on the APA's cause of action when there is an adequate remedy in a court, 5 U.S.C. § 704, but that limitation is also not at issue here.

The central point here is that grant agreements are the "source of the rights" plaintiffs assert in this case and the basis of the relief plaintiffs sought and received, which makes this case contractual and subject to the Tucker Act. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (quotation omitted); *see also*, *e.g.*, *United States v. J & E Salvage Co.*, 55 F.3d 985, 987-88 (4th Cir. 1995) (applying *Megapulse*). Plaintiffs claim the source of their rights are various statutes and regulations, Pls.' Br. 21, but plaintiffs never identify any statute or regulation that provides them with any right to have the government fund the grants awarded to their members. Only the grant agreements do that. Plaintiffs simply skip over this point.

Plaintiffs also argue they cannot be seeking a contractual remedy because they are not asking for monetary damages. Pls.' Br. 22. This

misses the point. The injunction plaintiffs requested and received from the district court was not one ordering compliance with a statute or regulation. Rather, it was one "[o]rdering such grant funding reinstated forthwith," JA 48, to redress the fact that their members "have been and will continue to be deprived of essential funding," JA 59. In other words, "[s]tripped of its equitable flair," plaintiffs sought one thing: they wanted "the Government to keep paying up." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025). But that is "the classic contractual remedy of specific performance." *Id.* (quoting *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)). And any such "request for an order that the government 'must perform' on its contract is one that 'must be resolved by the Claims Court.'" *Id.* (quoting *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985)).

2. Plaintiffs' other arguments likewise elide the relevant issues. Plaintiffs' argument that grants are not contracts, Pls.' Br. 18-21, was rejected by the Supreme Court in *California*, which applied the Tucker Act to grants, including some of the very same grants at issue in this case. *See, e.g.*, JA 355; *Vera Inst. of Just. v. U.S. Dep't of Just.*, No. 25-

11

cv-1643, 2025 U.S. Dist. LEXIS 128304, at *28 (D.D.C. July 7, 2025)

("Plaintiffs, however, fail to explain how the grant agreements in this

case differ from those in California III, which the Supreme Court

treated as contracts implicating Tucker Act jurisdiction.").  And it is in

any event clear from first principles that the grants at issue here are

effectively contracts:  they are written agreements, agreed to by both

the government and grantee, and specify the amount the government

agreed to pay, the work the grantee was to perform in exchange for the

payment, the performance period for the work, and all applicable

policies and procedures, including the conditions under which the grant

could be terminated.  *See*, *e.g.*, JA 349-354 (TQP grant); JA 423-428

(SEED grant).  Indeed, the cited termination provision at issue here—

authorizing the Department to terminate a grant if it determines the

grant "no longer effectuates the program goals or agency priorities"—is

an express provision of the grant agreements.  JA 669 (quotation

omitted).  Grants are thus not categorically distinct from contracts, as

plaintiffs' argument suggests.  *See Bennett v. New Jersey*, 470 U.S. 632,

638 (1985) (noting that "many . . . federal grant programs" are "much in

the nature of a contract") (quotation omitted); *see also Columbus Reg'l*

*Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) ("[W]e have followed our predecessor court in treating federal grant agreements as contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound.").

Plaintiffs argue that the grants at issue here cannot be contracts because they provide no consideration for the government. Pls.' Br. 20-21. But the Federal Circuit rejected this argument, holding that consideration exists where the grant recipient "agreed to comply with an array of requirements attached to the receipt, use, and distribution of the grant money." *Columbus Reg'l Hosp.*, 990 F.3d at 1340; *Vera Inst. of Just.*, 2025 U.S. Dist. LEXIS 128304, at *29 (concluding that the argument grants are not contracts is "at odds with authorities from the Federal Circuit"). The grants at issue here also came with conditions, and plaintiffs concede that fact. *See* Pls.' Br. 50 (noting the conditions on the drawdown of funds).

3. Plaintiffs' related argument that the Court of Federal Claims lacks jurisdiction over this case relies on statutes and cases involving the distinct question of whether the Tucker Act confers jurisdiction in the Court of Federal Claims over cases involving efforts to obtain

13

contracts, *see* 28 U.S.C. § 1491(b), as opposed to merely efforts to enforce them, *see id.* § 1491(a)(1). Pls.' Br. 24-26. For instance, at issue in *Lummi Tribe of the Lummi Reservation v. United States*, 870 F.3d 1313, 1318 (Fed. Cir. 2017), was the alleged failure to issue grants provided by statute. That was also the issue in *National Center for Manufacturing Sciences v. United States*, 114 F.3d 196, 198 (Fed. Cir. 1997), where the claim arose from a failure to enter into a cooperative agreement provided by statute. Those cases are inapposite here.

4. Next, plaintiffs argue their case is a challenge to "broad agency overreach." Pls.' Br. 21-23. But plaintiffs' case is a challenge to the Department's termination of specific grants, Pls.' Br. 21, and the relief plaintiffs sought and received was to fund the grants awarded to members of plaintiffs specifically, not for the Department to fund grants generally, JA 685-686. It is the obligation to pay plaintiffs' members—created solely by the grant agreements—that enables plaintiffs' case. This case is therefore one to "enforce a contractual obligation" that the APA does not permit. *California*, 145 S. Ct. at 968 (quotation omitted).

Even if plaintiffs could point to a genuine statutory violation, that would still not be enough. In *Spectrum*, 764 F.2d at 894-95, which

14

plaintiffs do not even attempt to distinguish, the D.C. Circuit rejected a plaintiff's attempt to seek an injunction in district court enforcing an asserted contractual right to payment under the guise of enforcing a statutory obligation. The fundamental problem with that claim was that the right to the "payments [wa]s created in the first instance by the contract," rather than by any statute. *See id.* at 894. So too here.

Plaintiffs inadvertently concede the contractual nature of their case when they claim to seek only the "ability to continue programmatic work under the federal grants." Pls.' Br. 23. But the grant terminations did not prohibit plaintiffs from conducting whatever teacher education programs they wish. Rather, the Department simply declined to continue paying for those programs. And what members of plaintiffs really want (and got from the district court) is relief requiring the government to continue to pay plaintiffs under their grant agreements, not merely relief forbidding the government from interfering in the ability of members of plaintiffs to work on projects of their choosing.

5. Finally, plaintiffs argue that the district court must have jurisdiction because the Court of Federal Claims lacks the authority to

15

undo the grant terminations. Pls.' Br. 24-27. While this is true, it

reflects the deliberate decision by Congress "to foreclose specific

performance of government contracts" and preclude APA review of such

claims. *Spectrum*, 764 F.2d at 893 n.2 (quotation omitted); *see also*

*Presidential Gardens Assocs. v. United States ex rel. Secretary of Hous.*

*& Urb. Dev.*, 175 F.3d 132, 143 (2d Cir. 1999) ("Actions seeking specific

performance of a contract, brought in order to avoid the Tucker Act's

limitation on money judgments, are not allowed to be brought against

the United States."). This case will not, as plaintiffs complain, fall into

some "jurisdictional void." Pls.' Br. 27. Rather, it will be heard in the

forum Congress decided was appropriate. The fact plaintiffs' preferred

remedy of specific performance is unavailable is a feature of the

remedial scheme created by Congress, not an anomaly that suggests

plaintiffs' view of the law is correct. And as noted above, cases holding

that money damages are not an adequate remedy under 5 U.S.C. § 704

under some circumstances are not relevant to the argument that

plaintiffs' claims are impliedly precluded under 5 U.S.C. § 702.

6. An effort to force the government to comply with a statute to

expend funds that is untethered to any specific grant would look very

16

different from this case. Although the government disagrees with the district court's reasoning in *AIDS Vaccine Advocacy Coalition v. United States Department of State*, 770 F. Supp. 3d 121 (D.D.C. 2025), and has appealed its decision, that court was correct to recognize that the proper remedy in a case in which the plaintiffs asserted that the relevant statutes required the government to expend the funds Congress has appropriated for grant programs was not an injunction requiring the agencies "to continue to contract with" the plaintiffs specifically. *Id.* at 154. Rather, the plaintiffs' legal theory "dictate[d] only that the Executive follow Congress's decision to spend funds." *Id.* Thus, the district court entered an injunction requiring the defendants to "make available for obligation" the appropriated funds but not requiring the defendants to reinstate the plaintiffs' specific grants. *Id.* at 155. Here, by contrast, the court did the latter.

### B. The Department's decision to reallocate funds is committed to agency discretion and not reviewable under the APA.

Even if the Tucker Act did not "impliedly forbid[]" review, 5 U.S.C. § 702, the district court still erred because the challenged decisions to terminate grants was committed to agency discretion by law. As the

17

Supreme Court made clear in *Lincoln v. Vigil*, 508 U.S. 182 (1993),

agency decisions to allocate or reallocate lump-sum appropriations

between programs are "'committed to agency discretion by law' and

therefore not subject to judicial review under the Administrative

Procedure Act," *id.* at 184 (quoting 5 U.S.C. § 701(a)(2)).  The "allocation

of funds from a lump-sum appropriation is" an "administrative decision

traditionally regarded as committed to agency discretion" because the

"very point of a lump-sum appropriation is to give an agency the

capacity to adapt to changing circumstances and meet its statutory

responsibilities in what it sees as the most effective or desirable way."

*Id.* at 192.  As long as the agency abides by the relevant statutes (and

whatever self-imposed obligations may arise from regulations or grant

instruments), the APA "gives the courts no leave to intrude."  *Id.* at 193.

　　　Plaintiffs do not contest that the terminated grants were

established and funded by statutes that only direct grant awards "on a

competitive basis, to eligible" entities.  20 U.S.C. § 1022a(a), (c) (TQP

grants); *id.* § 6672(a) (SEED grants); *id.* § 6632(a) (TSL grants).  These

statutes are functionally identical to what was at issue in *Lincoln*,

which broadly authorized the agency to "expend such moneys as

18

Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians, for the relief of distress and conservation of health."  508 U.S. at 185 (quotation omitted).  As a result, plaintiffs are left to argue that other statutes and regulations provide the necessary "meaningful standards" for judicial review.  Pls.' Br. 31.

Plaintiffs primarily point to a list of optional priorities that "may be used across the [Department's] discretionary grant programs to further the Department's mission."  86 Fed. Reg. 70,612, 70,612 (Dec. 10, 2021) ("The Secretary may choose to use an entire priority . . . or use one or more of the priority's subparts."); *see* Pls.' Br. 31.  While plaintiffs are correct that this list of priorities can only be changed by notice-and-comment rulemaking, Pls.' Br. 31, they elide the fact the priorities are only "intended to be a menu of options for use in . . . discretionary grant programs," and the "Department may choose which, if any, of the priorities or subparts are appropriate for a particular program competition, as well as the appropriate level of funding and selection criteria," 86 Fed. Reg. at 70,615.  This regulation thus does not limit the Department's discretion to decide which grants best serve the agency's purposes.  To the contrary, the grant programs at issue here "permit[]

19

the Secretary to use discretionary judgment in selecting applications for funding." 34 C.F.R. § 75.1(b).

Next, plaintiffs point to the authority the Department relied upon in terminating the grants, which is an express grant term and contained in 2 C.F.R. § 200.340(a). Pls.' Br. 32. But that provision also provides the Department with broad discretion and authorizes termination where a grant "no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). In no way does that provision limit the Department's discretion. To the contrary, the provision was adopted "to strengthen the ability of the Federal awarding agency to terminate Federal awards," as a rejection of numerous requests to allow termination only "for cause," and to facilitate terminations that are "in the interest of the government." 85 Fed. Reg. 49,506, 49,507-08 (Aug. 13, 2020).

The last source of limitations on the Department's discretion that plaintiffs cite are the requirements that grant recipients provide assurances to the Department that they are spending money in accord with the grant statutes. Pls.' Br. 33. But plaintiffs cite no authority

20

that such assurances are conclusive, and the Department is free to come to its own conclusions on what grants best advance the grant statutes.

The fundamental point is that even under plaintiffs' understanding of the statutes and regulations, nothing about those mandates requires the agencies to fund plaintiffs' specific grants or constrain the agencies' discretion to decide which grants to select for funding. *See Amica Ctr. for Immigrant Rights v. U.S. Dep't of Just.*, No. 25-298, 2025 U.S. Dist. LEXIS 127513, at *44 (D.D.C. July 6, 2025) (holding the agency "has discretion to discontinue its use of the earmarked funds for that specific program" where "no statute or regulation" mentions funding that specific program). At most, those mandates might support review of claims contending that the Department was not awarding any grants or awarding grants to entities that were statutorily ineligible, but that is not this case.

## C.   The challenged grant terminations were reasonable and reasonably explained.

Even if the Department's discretionary decisions were subject to review, they would be upheld under the arbitrary-and-capricious standard, which "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414,

21

423 (2021). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.*

The challenged grant terminations came after the Department conducted an individualized review pursuant to the Acting Secretary's directive to identify grants that fund programs that are contrary to the Department's policy priorities. JA 676-678. The Department confirmed that the grants at issue here in fact funded such programs and terminated those grants on that basis. JA 676. Not all grants held by members of plaintiffs' organizations were terminated. JA 646. Since the grant terminations were for the common reason that the grant funded DEI, a common explanation was provided. That complied with the APA; it is a "fundamental norm of administrative procedure" that agencies must "treat like cases alike." *Kirk v. Commissioner of SSA*, 987 F.3d 314, 321 (4th Cir. 2021) (quoting *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007)).

Plaintiffs argue the grant terminations were nonetheless arbitrary and capricious because the Department never changed the regulation that provided a list of optional priorities that the Department may use

22

in its discretionary grant programs.  Pls.' Br. 25-36.  But, as discussed above, that regulation provided only a "menu of options," expressly contemplated that Department would choose "the appropriate level of funding and selection criteria," 86 Fed. Reg. at 70,615, and did not limit ability of the "Secretary to use discretionary judgment in selecting applications for funding," 34 C.F.R. § 75.1(b).  The exercise of discretion expressly contemplated by the regulations to select which grants should receive funding is not arbitrary or capricious.  Indeed, the termination authority relied upon here is not limited to cases where a grant no longer effectuates "agency priorities" but extends to where a grant no longer effectuates "program goals."  2 C.F.R. § 200.340(a)(4).

Lastly, plaintiffs claim that the termination letters did not provide sufficient clarity into why the grants were terminated.  Pls.' Br. at 37-38.  But there has never been any uncertainty that the Department was terminating grants because they supported "DEI initiatives," and the termination letters made that fact clear.  *See* JA 667-668 (quotation omitted).  Plaintiffs clearly understood that was the reason the grants were being terminated.  In their complaint, they alleged "it is clear" that the grants were terminated because they funded "Diversity,

23

Equity, and Inclusion" and "equity training." JA 25-26 (quotation omitted). Plaintiffs' claim now that they are uncertain about the reason for the grant terminations is not credible.

## II. The Relevant Equitable Considerations Preclude Injunctive Relief

The balance of equities and the public interest counsel against a preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that these factors merge in cases involving the government). On this point *California* also "inform[s] how a court should exercise its equitable discretion." *Boyle*, 2025 U.S. LEXIS 2695, at *1. In *California*, the Supreme Court explained that the government suffers irreparable harm from an order reversing grant terminations— including some of the same grant terminations at issue in this case, *see*, *e.g.*, JA 355—because it is "unlikely to recover the grant funds once they are disbursed." 145 S. Ct. at 969. Conversely, nothing about the denial of a preliminary injunction would prevent plaintiffs from "recover[ing] any wrongfully withheld funds through suit in an appropriate forum." *Id.* That explanation resolves this issue.

Plaintiffs argue that this Court should ignore the Supreme Court's guidance on this point because judicial estoppel precludes the

24

government from diverging from its decision not to challenge plaintiffs'
claim of irreparable harm in district court. Pls.' Br. 41. But even if this
Court treated as established that plaintiffs had suffered some
irreparable harm, the relevant question—even setting aside the
independently dispositive point that plaintiffs cannot establish a
likelihood of success on the merits—would be whether the balance of
harms favors plaintiffs. And the government's arguments, and the
*California* decision, are plainly relevant to that point.

Moreover, plaintiffs do not explain how the government benefitted
from its position in district court—a crucial element of judicial
estoppel—and their argument is thus better analyzed under the
doctrine of waiver or forfeiture. *King v. Herbert J. Thomas Mem'l
Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998) ("[T]he party to be estopped
must have taken inconsistent positions intentionally for the purpose of
gaining unfair advantage."). And any waiver or forfeiture should be
excused. Plaintiffs have suffered no prejudice, as they do not claim to
have lost the opportunity to present relevant evidence and instead
purport to have "easily demonstrated the likelihood of irreparable
injury" to the district court. Pls.' Br. 43-48 (emphasis omitted).

25

Particularly given the intervening Supreme Court precedent in *California*, this Court should assess whether that evidence suffices.

Finally, plaintiffs argue that any harm to the public fisc is speculative and not supported by the record. Pls.' Br. 49-50. But plaintiffs do not dispute that the entire point of the injunction they sought was to allow them to access grant funds from the government. And plaintiffs do not promise to repay any funds disbursed if the government ultimately prevails on appeal. On the contrary, plaintiffs concede that any money they receive would be promptly spent when they claim harm from the inability to pay outstanding expenses. *See* Pls.' Br. 43-47. Against that backdrop, the injury to the public fisc is clear and wholly supported by the record.

## III. The Preliminary Injunction Is Overbroad

Even accepting the district court's conclusions on the merits, the court's order is overbroad because it extends to all "TQP, SEED, and TSL Grant Awards of Plaintiff NCTR and Plaintiffs' Grant Recipient members." JA 685. In so doing, the order is not limited to the specific grants and grant recipients identified in the complaint, JA 28-41, or even to the members of the plaintiff organizations at the time the

26

complaint was filed.  Indeed, following the entry of the injunction, plaintiffs asked the government to restore grants to additional institutions who suddenly "joined" plaintiffs as members.

The breadth of this order leads to two fundamental problems. First, unidentified members of the organization can obtain relief if plaintiffs prevail but may not be precluded from separately obtaining relief if the government prevails; although plaintiffs purport to represent the interests of their members, they have never claimed authority to bind them to an adverse judgment.  *Cf. Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring) (explaining the equitable and historical problems with "asymmetric" suits).

Second, it provides "relief that extended beyond the parties," which is "outside the bounds of [the district] court's equitable authority under the Judiciary Act."  *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552, 2554 (2025).  As the Supreme Court explained, an "injunction's protection extends only to the suing plaintiff."  *Id.* at 2557.  Accordingly, the district court's injunction must be limited to grant recipients who have placed themselves before the court by being identified in the complaint.

27

Plaintiffs' only argument in response is that "all of the grant recipients are similarly situated." Pls.' Br. 52-53. But, as the Supreme Court explained, the "question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *CASA*, 145 S. Ct. at 2557. Thus, the fact the district court's injunction makes no distinction among similarly situated grant recipients based on whether those entities were before the court demonstrates the "court . . . exceed[ed] its power." *Id.* at 2562.

## CONCLUSION

For the foregoing reasons and those in the government's opening brief, the judgment and injunction of the district court should be vacated, and the case should be remanded with instructions to dismiss for lack of jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
KELLY O. HAYES
  *United States Attorney*

DANIEL TENNY
MARK R. FREEMAN
DANIEL TENNY
SEAN R. JANDA
BRIAN J. SPRINGER

 *s/ Benjamin C. Wei*
BENJAMIN C. WEI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7235*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-2875*
  *benjamin.c.wei@usdoj.gov*

August 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5550 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Benjamin C. Wei*
Benjamin C. Wei